CLEVELAND-CLIFFS IRON COMPANY *v.*
DEPARTMENT OF REVENUE.

1. Taxation—Intangibles—Past Profits—Situs.

This State may not pursue foreign corporation's past profits arising from Michigan business by a tax on intangibles imposed after those profits were acquired during a period in which this State had no such tax and reinvested them in intangible property out of the State, where such property was not shown to have been a part of the working capital of a unitary corporation and was not used by the corporation in furtherance of its business in this State during the year for which tax was imposed nor otherwise used in this State in that year, as the situs of such property was not in this State nor then benefiting from the aid or protection of laws or government of this State (PA 1939, No 301, as amended).

2. Evidence—Presumptions.

A presumption of evidence will not be indulged in the face of a clear showing to the contrary.

3. Taxation—Intangibles—Presumptions—Evidence.

It will not be presumed that portion of nonresident corporate taxpayer's intangible personal property sought to be taxed was used in the furtherance of its business in this State, in the face of a clear showing to the contrary (PA 1939, No 301, as amended).

References for Points in Headnotes

[1, 3, 4] 51 Am Jur, Taxation, §§ 860, 861.
[1, 3, 4] "Business situs" for purposes of property taxation of intangibles in State other than domicil of owner. 76 ALR 806; 143 ALR 361, 367.
[2, 3] 20 Am Jur, Evidence, § 160.
[5] 51 Am Jur, Taxation, §§ 109, 122.
[7–9] 51 Am Jur, Taxation, § 856 *et seq.*
[10] 14 Am Jur, Costs, § 91.

4. SAME — INTANGIBLES — FOREIGN CORPORATION — UNITARY ENTER-
PRISE.

Foreign corporation engaged in the businesses of mining iron
ore, coal, lake transportation, land and lumbering in this and
other States and Canada, which various businesses, as conduct-
ed in this State and elsewhere, were separate from one another
and capable of entirely independent existence and dissociation
from one another, was not engaged in a unitary enterprise
subjecting its previously acquired intangible personal prop-
erty having a situs elsewhere to taxation by this State un-
der the intangibles tax law as such statute imposed a tax
only on intangibles acquired or used during year for which
the tax was imposed (PA 1939, No 301, as amended).

5. SAME—RETROACTIVE TAXATION—STATUTES.

A statute cannot impose retroactive taxation for previous years
upon a class of property not then subject to taxation at all
(PA 1939, No 301, as amended by PA 1945, No 165).

6. SAME—DUE PROCESS.

The test of whether a tax law violates the due process clause is
whether it bears some fiscal relation to the protection, oppor-
tunities, and benefits given by the State, or in other words
whether the State has given anything for which it can ask
a return.

7. CORPORATIONS—FOREIGN CORPORATIONS—TAXATION—EQUAL PRO-
TECTION.

Foreign corporations that have been admitted to do business
within a State are entitled to equal protection with domestic
corporations at least to the extent that the property of the
foreign corporations is entitled to equality in the taxation
of property.

8. TAXATION—INTANGIBLES—FOREIGN CORPORATIONS—OUT-OF-STATE
SITUS.

A foreign corporation which has been admitted to do business
in this State and then subjected to a tax on its intangible
personal property used in connection with or acquired from the
conduct of business outside of the State was denied the equal
protection of the laws of this State, where a domestic corpo-
ration would be relieved of such tax if such property were
taxed outside of the State (US Const, am 14; Mich Const
1908, art 2, § 1; PA 1939, No 301, § 1, subd [c], § 12, as
amended by PA 1945, No 165).

9. SAME—INTANGIBLES—EQUAL PROTECTION—OUT-OF-STATE SITUS.

Statute, *held*, void insofar as it imposed a tax upon intangible
personal property of foreign corporation, admitted to do

business in this State, but which property has acquired a situs outside of this State and is there taxable, and not shown to have been used as a part of its working capital or otherwise in the furtherance of the corporation's business in this State and which corporation was not a unitary enterprise, there being a denial of equal protection of the laws of this State, in view of the fact that a domestic corporation would not be required to pay the tax under like circumstances (US Const, am 14; Mich Const 1908, art 2, § 1; PA 1939, No 301, § 1, subd [c], § 12, as amended by PA 1945, No 165).

10. COSTS—PUBLIC QUESTION—INTANGIBLES TAX—FOREIGN CORPORATIONS.

No costs are allowed in action of assumpsit to recover amounts paid under protest under the statute imposing a tax on a foreign corporation upon its intangible property having a situs elsewhere, a matter of public interest and importance being involved (PA 1939, No 301, § 1, subd [c], § 12, as amended by PA 1945, No 165).

Appeal from Marquette; Jackson (Glenn W.), J. Submitted June 15, 1950. (Docket No. 31, Calendar No. 44,785.)   Decided December 6, 1950.

Action by Cleveland-Cliffs Iron Company an Ohio corporation, against State of Michigan, Department of Revenue, and another to recover taxes paid under protest. Judgment for plaintiff. Defendants appeal. Affirmed.

*Francis A. Bell, Dyer, Angell, Meek & Batten* and *Jones, Day, Cockley & Reavis* (*J. H. Kerr,* of counsel), for plaintiff.

*Stephen J. Roth,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *T. Carl Holbrook* and *Daniel J. O'Hara,* Assistants Attorney General, for defendants.

REID, J. Plaintiff brought this action in assumpsit in Marquette county circuit court to recover $33,592.08 paid by plaintiff under protest in 1947 under an assessment against its predecessor corporation

for alleged intangible taxes based upon intangible personal property owned by the predecessor corporation during the year 1946.

The tax was assessed pursuant to defendants' interpretation of the intangible tax act, which is PA 1939, No. 301, as amended by PA 1941, No 233 and PA 1945, No 165 (CL 1948, § 205.131 *et seq.* [Stat Ann and Stat Ann 1947 Cum Supp § 7.556 (1) *et seq.*]).

This action was brought under section 13 of Act No 301 (CL 1948, § 205.143). The circuit court rendered judgment for plaintiff and defendants have taken a general appeal.

Plaintiff filed its intangible tax return for the year 1946, which the defendant department of revenue did not accept, and defendant department returned the check of plaintiff together with recomputation of the amount. Plaintiff protested the recomputation and requested a hearing, which was granted, and hearing held on September 17, 1947, at which the defendant department affirmed its formerly announced computation. Among other things, the computation was based upon a figure of $8,314,835.73 total out-of-Michigan bank deposits (deposits in banks located outside of Michigan) as of September 30, 1946, on which in pursuance of a formula hereinafter mentioned the percentage taxable was fixed at 51.0881151, reducing the taxable bank deposits to the figure of $4,247,892.85, on which the tax at 1/25 of 1 per cent. was computed as $1,699.16. The total assessment included, among other items, a tax of $28,824.39 on stocks and bonds. It is not to be considered necessary for the purposes of this decision to recite all the computations in detail but the 2 items of cash in out-of-Michigan banks and stocks of other corporations above referred to are principal items.

This appeal involves the question of the validity of the tax.

The present corporation (plaintiff) was organized in 1947 and arose out of a consolidation of 2 corporations, one of which bore the same name as the present corporation. It is unnecessary to differentiate in this opinion between the various corporations, the successor corporation being in the same position as its predecessors, and the word plaintiff as used in this opinion shall be considered as referring to whichever of the corporations was in existence and actively carrying on the business at any period referred to herein.

Beginning about the year 1846, certain predecessor corporations of present plaintiff began to be the owners of iron mines in the upper peninsula of Michigan and to mine and sell ore therefrom. There have been 3 different corporations named "The Cleveland-Cliffs Iron Company." The first of the 3 was a West Virginia corporation organized May 7, 1891. The second was an Ohio corporation organized December 7, 1920. On July 9, 1947, this second corporation was consolidated with The Cliffs Corporation, an Ohio corporation, to form a new Ohio corporation, the third "The Cleveland-Cliffs Iron Company," which third corporation paid the tax involved herein, and with strict propriety is to be designated the plaintiff. The second corporation, as above referred to, sometimes called "Old Cleveland-Cliffs," at all times after its organization in 1920 and up to and including July 9, 1947, when it was consolidated with the present plaintiff, had its accounting and general business and sales offices located in Cleveland, Ohio, and for the year 1946 all of its officers and 7 of its 9 directors resided in the Cleveland area in the State of Ohio and none of its directors for the year 1946 resided in Michigan. The shareholders' meetings of the predecessor or old Cleveland-Cliffs were held in Cleveland, Ohio; with only 2 exceptions the meetings of its directors were held in Ohio, although 1 meeting

of the executive committee of the board of directors was held in Michigan in 1924. The general business and affairs of old Cleveland-Cliffs were conducted and managed by its directors and officers, who functioned from its offices in Cleveland where its corporate books, records and general accounts were kept. For many years prior to and at all times during 1946, old Cleveland-Cliffs was qualified to do business in 10 States, including Michigan, and in the province of Ontario, Canada. Its principal departments were iron ore, coal, lake transportation, land and lumbering.

During the calendar year 1946 it operated 8 underground iron ore mines and 1 open-pit mine (siliceous) in Michigan and 4 open-pit iron ore mines in Minnesota. It sold the ore mined for its own account and also purchased ore for resale. Such ore so purchased was mined in Canada, Michigan and Minnesota and the great bulk of the ore so mined and so purchased was sold to buyers in States outside of Michigan and in Canada. Contracts for the purchase of such ore were approved and signed by old Cleveland-Cliffs at its Cleveland offices and payments therefor were made therefrom. Its iron ore sales office was located in its Cleveland offices where its ore sales were negotiated and approved. All contracts for the sale of iron ore were negotiated in Cleveland and were there executed by old Cleveland-Cliffs and remittances therefor were payable to its Cleveland offices.

The iron ore mine department office of old Cleveland-Cliffs, in Cleveland, and the iron ore mining business of the company, including all matters pertaining to development, mining, production, dispatching, sales and other matters, were in charge of the president of the company. Each mine was in charge of a local superintendent who was under the manager of mines for his State. The manager of

mines in each State had immediate charge over the operations of the various mines whose superintendents reported to him.   The general manager of all iron ore mines of the company was located in Ishpeming, Michigan, and the manager of Michigan and the manager of Minnesota mines reported to him. The general manager of all the mines in turn was under the direction and control of the president of the company in the Cleveland offices.   The records kept at the local mine offices and the central mine offices pertain to the operations of the respective mines including employment, payrolls, supplies, other costs, production, ore analysis and shipping records.   All other records in respect thereto, including contracts, sales, deliveries, accounts and other financial records, were kept and maintained in Cleveland.   All matters of policy and general business pertaining to the mines and their operations were subject to the control and management of the officers acting at the Cleveland offices.

The coal department of old Cleveland-Cliffs and its general coal sales office were located in its Cleveland offices. . All coal sold by it was mined outside of Michigan.   The company purchased all or a portion of the output of mines in other States.   The contracts of purchase were approved and signed by it in Cleveland with coal producers outside of Michigan and all payments for such coal were made from its Cleveland offices.   It also acted as a coal selling agent for certain coal-mining operators who were nonresidents of Michigan and who mined coal outside of Michigan, pursuant to contracts signed by it in Cleveland.   It guaranteed all coal accounts to its principals, paid such accounts at monthly intervals and assumed all risks of collection.   It sold coal to buyers in many States, including Michigan, and all amounts due for coal were payable at its Cleveland offices.   It maintained coal sales offices

in various cities in other States, and also in Detroit, Michigan. It owned and operated a coal dock at Green Bay, Wisconsin.

The coal handled, purchased and sold by old Cleveland-Cliffs furnished much of the upbound lake cargo for the 22 vessels operated or managed by it, from Lake Erie ports to ports in Michigan, Wisconsin, Minnesota and Canada, and the iron ore mined or purchased by it in Michigan and Minnesota or purchased by it in Canada furnished much of the downbound lake cargoes for these vessels. Slightly over 2 per cent. of its coal for the year 1946 was used for its own purposes, mostly for fueling these vessels.

The vessel-operating department office of old Cleveland-Cliffs was located in its Cleveland offices. The company in 1946 operated a fleet of 22 boats (which included 3 boats for which it furnished management services) on the Great Lakes. These boats transported coal from Lake Erie ports outside Michigan to ports in Michigan, Wisconsin, Minnesota and Canada, and transported iron ore, grain and stone from ports in Canada, Minnesota, Wisconsin and Michigan to lower lake ports.

Old Cleveland-Cliffs owned, held and disposed of real estate, lands and timber in Michigan. It owned lands and interests therein in other States. The land and lumbering department was in charge of the vice-president of old Cleveland-Cliffs at the Cleveland office. The company had a land and lumbering department office in Negaunee, Michigan, in general charge of a manager who negotiated the details of sales, purchases, exchanges and leases of Michigan lands, lumbering contracts and similar matters, all of which were subject to the control and management of the vice-president in Cleveland. All contracts, leases and conveyances were signed on behalf of the company in Cleveland. Instruments

relating thereto and records of such matters were kept in Cleveland. Only about 2 per cent. of the timber produced by old Cleveland-Cliffs was used by it in its mining operations for mining timber.

The Canadian mined iron ore which old Cleveland-Cliffs purchased and sold had no connection with Minnesota or Michigan ore handled by the company or with its coal or timber department. Likewise its Minnesota operations were separate and distinct from its activities in Michigan. Its coal department could be operated independent of its timber and ore departments, its timber department could be operated independent of its ore, coal and lake transportation departments and its ore department could be operated independent of its coal and timber departments.

The intangible property owned by old Cleveland-Cliffs for the calendar year 1946 upon which the intangible tax involved in this case was based consisted of

(a) notes and accounts receivable,

(b) deposits in banks outside the State of Michigan,

(c) corporate securities in corporations foreign to Michigan and in Michigan corporations.

Old Cleveland-Cliffs also had deposits in Michigan banks upon which the Michigan intangible tax was paid by the depositary banks and such deposits in Michigan banks are not involved in this case.

The bank deposits in banks outside the State of Michigan were under and subject to the control of the directors and officers of old Cleveland-Cliffs during the year 1946. Said deposits in banks outside the State of Michigan were withdrawable only by certain authorized officers of old Cleveland-Cliffs who were located at and performed their duties from the Cleveland offices. These deposits represented funds received from the business and from the in-

vestments of old Cleveland-Cliffs and were usable wherever required in its operations and as allotted by the directors and officers, including replenishment of payroll accounts at its local offices in the various States, the payment for iron ore and coal purchased, supplies, office expenses, and other costs and expenses. All such payments were made from the Cleveland offices except the disbursing of local payrolls in the various States for which funds were supplied from the Cleveland offices upon requisition therefor from the local offices and deposited in local banks in the various States, except for some other few payments for supplies which were made by local offices upon requisition for funds from the Cleveland offices. All records, invoices and documents, et cetera, in respect thereof were kept in Cleveland. All matters of policy in respect to purchasing were under the control and management of the Cleveland offices. None of the bank deposits were pledged, mortgaged or hypothecated in 1946.

The company's notes and accounts receivable, with certain exceptions set forth in the stipulation, arose out of or resulted from contracts approved and signed or transactions or sales approved by old Cleveland-Cliffs at its principal offices in Cleveland, Ohio, and all matters in respect to these contracts, transactions and sales were under the direction, control and management of the officers of old Cleveland-Cliffs at its Cleveland offices and the collections thereof were handled by and the amounts due therefrom were payable to old Cleveland-Cliffs at its Cleveland offices. A portion of these accounts receivable arose out of local transactions in Michigan. None of the receivables were mortgaged, pledged or hypothecated during 1946.

The stocks in the various corporations were acquired by old Cleveland-Cliffs in years prior to 1946, some as far back as 1920, the year of its or-

ganization, pursuant to action taken by its directors
and officers and transactions consummated in
Cleveland. All matters in respect to their owner-
ship and the exercise of rights thereunder were un-
der and subject to the control of the officers and di-
rectors of old Cleveland-Cliffs in Cleveland. All
dividends paid on these securities were paid to its
Cleveland offices. The stock certificates were kept in
the vaults of the Union Commerce Bank of Cleve-
land, Ohio. During 1946 old Cleveland-Cliffs re-
ceived the dividends and exercised voting rights
under these stocks. The certificates were not
pledged, mortgaged or hypothecated during 1946.
During 1946 some shares of stock in Republic Steel
Corporation were sold, and certain shares of Jones
& Laughlin stock were exchanged for common stock
pursuant to conversion rights. Nothing further was
done with these stock certificates in 1946.

The statutory office of old Cleveland-Cliffs was in
the Dime building, Detroit, Michigan, wherein it was
represented by the Corporation Company as statu-
tory agent for service of process only.* No corpo-
rate books or records were kept at the statutory
office.

Old Cleveland-Cliffs paid its privilege (franchise)
tax for the privilege of doing business in Michigan
as a foreign corporation and has paid all sales and
use taxes, all ad valorem taxes on its physical prop-
erty located in Michigan and all other taxes due
from it to the State of Michigan and its political
subdivisions for the year 1946. The only tax in
controversy is the intangible tax for which this suit
was brought.

Old Cleveland-Cliffs duly tendered to the defend-
ant department of revenue an intangible tax return
in 1947, and tendered payment thereon based upon

---

* See CL 1948, §§ 450.79, 613.29 (Stat Ann §§ 21.79, 27.759).—
REPORTER.

its intangibles for the calendar year 1946 in accordance, as plaintiff claims, with the terms of PA 1939, No 301, as it stood prior to the amendments contained in PA 1945, No 165, which payment was refused and returned by the defendants. It also tendered to the defendants an intangible tax return in 1947 based upon its 1946 intangibles under PA 1939, No 301, as amended by, among others, PA 1945, No 165 (CL 1948, § 205.131 *et seq.* [Stat Ann and Stat Ann 1947 Cum Supp § 7.556 (1) *et seq.*]), as construed by defendants and upon forms furnished by them, but refused to make payment thereon. The assessment was based upon this second return, which assessment was paid by plaintiff under protest and forms the basis for this action.

Defendants claim that the plaintiff is a so-called "unitary" enterprise and that the tax in controversy imposed by the State was not imposed differently as applied to nonresidents conducting a unitary enterprise from nonresidents not conducting a unitary enterprise.

As to the defendants' claim of the unitary character of plaintiff's enterprise, defendants further claim that each of plaintiff's departments is interdependent upon the others, that each department sprang from a corporation organized about 1853 for exploration and mining of ore, that all profits flow into a common treasury (in Ohio) and all activities stem from a general office, and that there has been properly allocated to Michigan a portion of the intangibles of plaintiff which defendants claim is doing business both in Michigan and in other States, which intangibles defendants claim the right to tax by reason of the same being used in connection with or acquired from the conduct of plaintiff's business both within and without the State of Michigan.

None of plaintiff's intangibles are shown to be

stocks in banks or trust companies doing business in Michigan.

Section 1 (c) of the statute (CL 1948, § 205.131 [Stat Ann 1947 Cum Supp § 7.556 (1)]), relied on by the defendants is as follows:

"The 'situs' of intangible personal property for the purpose of taxation under the provisions of this act shall be the domicile of the owner thereof, except that any intangible personal property, not otherwise exempt under the laws of this State, owned by a person having his domicile outside of this State but used in connection with or acquired from the conduct of his business in Michigan, or placed in the hands of a manager or agent in Michigan to the extent that such intangible personal property is invested in a course of repeated transactions in obligations of persons residing in Michigan or secured by property located in Michigan, shall be deemed to have a situs at the place of business, or where such manager or agent resides, as the case may be, within this State: Provided, That in the case of intangible personal property owned by a person having his domicile outside of this State but used in connection with or acquired from the conduct of his business both within and outside the State of Michigan, all such property shall be deemed to have a 'situs' in this State to the extent of the percentage of the whole of such property as determined by the allocation formula set forth in section 12 of this act. Intangible personal property owned by a person domiciled in Michigan, but used in connection with or acquired from the conduct of his business outside of Michigan, or placed in the hands of a manager or agent outside of Michigan to the extent that such property is invested in a course of repeated transactions in obligations of persons residing outside of Michigan, and being taxed as personal property or intangible personal property at the place where such business is carried on or transacted or where such manager or agent acts or resides shall not be

deemed to have a situs in Michigan. All shares of stocks in banks and trust companies doing business in this State under whatsoever authority organized shall, irrespective of the domicile of the owner thereof, be deemed to have a situs in this State for the purposes hereof and shall be subject to the tax imposed under this act which shall be computed in like manner as that imposed on other shares of stock subject to tax under this act."

The applicable part of section 12 of the intangible tax act (CL 1948, § 205.142 [Stat Ann 1950 Rev § 7.556 (12)]) is as follows:

"The administration of the provisions of this act is hereby vested in the department of revenue, which is hereby authorized to promulgate such rules and regulations as may be necessary in the administration of this act. The percentage of taxability of intangible personal property owned by a person having his domicile outside of this State but used in connection with or acquired from the conduct of his business both within and outside the State of Michigan shall be the average of the following 3 percentage ratios, separately computed: Michigan sales to total sales (or in case the business in Michigan does not consist of the making of sale; then Michigan business to total business); Michigan physical properties to total physical properties; and Michigan payrolls to total payrolls. The factor of Michigan sales includes, but is not limited to, sales in interstate commerce arising from or attributable to business activities in Michigan."

Defendants claim that plaintiff's business is unitary in nature. Defendants in their brief cite the following definition of unitary:

"A unitary business is one in which the units are clearly allied and not capable of separate maintenance as independent profit-making businesses. It has been held that the business of manufacturing,

or producing, and selling is ordinarily unitary and subject to statutory allocation [citing] *Bass, Ratcliff & Gretton* v. *State Tax Commission,* 266 US 271 (45 S Ct 82, 69 L ed 282)."

In the *Bass Case* the allocation spoken of was (pages 277, 278 of that case) the portion of the net income of the corporation, plaintiff in that case, upon which annual franchise tax should be computed on an apportionment of the intangibles of the corporation.

Plaintiff in this case, however, would further illustrate the meaning of the word unitary by turning to the definition set forth in *Adams Express Co.* v. *Ohio State Auditor,* 165 US 194, 222 (17 S Ct 305, 41 L ed 683):

"We repeat that while the unity which exists may not be a physical unity, it is something more than a mere unity of ownership. It is a unity of use, not simply for the convenience or pecuniary profit of the owner, but existing in the very necessities of the case—resulting from the very nature of the business."

It becomes therefore necessary to consider the nature of transactions carried on by the present plaintiff and its immediately preceding corporations in 1946, hereinbefore recited.

After having permitted plaintiff and predecessor corporations to take in the profits from sale of ore in a long course of previous years and reinvest such profits in intangible property at Cleveland, Ohio, when there was no intangible tax law at all in Michigan, the State may not now pursue such past acquired profits with an intangible tax merely because in years gone by such intangibles were acquired because of past profits arising from Michigan business. The situs of such intangibles is not in Michigan. The State of Michigan cannot extend its authority

into the city of Cleveland nor there give plaintiff any benefit of protection by reason of Michigan's laws or governmental officers; Michigan can render no governmental service respecting profits obtained by operations in Michigan and transferred in bygone years to possession in Ohio. The intangibles sought to be taxed in this case were not used by plaintiff in furtherance of its business in Michigan in 1946 nor otherwise used in Michigan in that year.

The tax statement made by defendants indicates that much more than 80 per cent. of the tax sought by the State is laid against ownership of stocks and other intangibles owned by the plaintiff and its predecessors many years before 1946.

Defendants claim:

"The intangibles tax is a specific tax and the legislature has seen fit to allocate, by reasonable formula, a portion of the intangibles of a company doing business both in this State and other States which it owns by reason of same being used in connection with or acquired from the conduct of its business both within and outside the State. The stipulated facts do not contain a statement as to how much of the intangibles portfolio is taxed in Ohio, which was the domicile of old Cleveland-Cliffs and is the domicile of appellee. However, it is reasonable to presume that a portion of those intangibles forming the portfolio is used in connection with Michigan business and derived from Michigan business, as well as from the business in other States, and a reasonable portion for taxation can be set up by the legislature to respond for the benefits furnished by the State of Michigan."

We know of no rule that would permit us in the face of a clear showing to the contrary, to presume that a portion of the intangibles sought to be taxed in this case was so used in 1946.

There is nothing in the conceded facts to show that plaintiff's intangibles, except possibly a small fraction thereof, were acquired in 1946. All such items as were acquired before 1946 should have been excluded and when excluded, at most, only a small fraction of the tax would remain.

Defendants cite *American Bemberg Corp.* v. *Carson,* 188 Tenn 263 (219 SW2d 169), in which the supreme court of Tennessee upholds excise and franchise laws of Tennessee as applied to 2 manufacturing corporations, whose manufacturing operation is entirely in Tennessee and almost all of whose tangible properties are in Tennessee, but both maintain offices in New York and from the New York offices almost all sales are made to customers, the goods being delivered from stocks in Tennessee. The Tennessee court held (p 282):

"It is well settled that Tennessee may tax intangibles located outside of Tennessee, if such intangibles are a part of the working capital of a unitary corporation."

In that case, however, there was no recital that any of the intangibles sought to be taxed were acquired prior to the year for which the tax was sought to be applied, in differentiation to the instant case, and also the instant case is further to be differentiated because in the instant case the intangibles are not shown to be part of the working capital of a unitary corporation. The Tennessee court seems to consider the unitary nature of the corporation's working capital a necessary prerequisite to such taxation.

Defendants further cite *Fleming* v. *Oklahoma Tax Comm.* (CCA), 157 F2d 888, in which a railroad company by its trustees sought to avoid an income tax which was upheld and the fact that the railroad

was unitary in its operations was found by the court which said among other things (p 891):

"The very nature of a vast continental or interstate transportation system brings it especially within this concept of a unitary business."

The above statement is equally applicable in the *Adams Express Company Case, supra.* Both the railroad and the express companies relied on and exercised their activities in carrying passengers or property through and into various States. The undertaking of each common carrier was to transport to destinations through or into another State. There is a necessary interdependence of the various departments of the railroad and express companies. The various department businesses of plaintiff in the instant case have no such interdependence.

The coal and lumber businesses of plaintiff were separate and capable of entirely separate general control and operation without connection with the ore business of plaintiff. Even the ore businesses in other States and in Canada were separate from Michigan ore business and capable of entire dissociation therefrom. From all the record it would seem that plaintiff's Michigan ore business was fully capable of existence entirely independent of all other of plaintiff's departments. The stocks held in non-Michigan corporations had in general nothing to do with Michigan ore business nor other business of plaintiff carried on in Michigan in 1946.

The business of plaintiff in 1946 was not unitary in the sense in which that word is used in the *Bass, Ratcliff & Gretton Case, supra,* and *Adams Express Company Case, supra.* Thus an argument very much relied on by defendants over the nature of plaintiff's business as though unitary fails for want of support in the testimony and the law applicable to the facts therein disclosed.

We find that practically all the intangibles which the State (defendant) sought to tax were not in 1946 used in connection with plaintiff's business both within and outside the State of Michigan and in consequence the allocation of any percentage of plaintiff's intangibles to Michigan for purposes of the tax in question cannot be sustained on the ground of the use made by plaintiff of its intangibles as though used in connection with its business in Michigan.

We proceed to consider whether the tax can be sustained on a further ground claimed by defendants because of circumstances surrounding the acquiring of the intangibles.  In that connection, we construe the statute in question to impose a tax only on intangibles "acquired" or "used" during the year for which the tax was imposed.

"It would seem that a statute cannot impose retroactive taxation for previous years upon a class of property not then subject to taxation at all." 2 Cooley, Taxation (4th ed), § 520.

The legislature was without power to tax intangibles which are owned outside of the State, which intangibles reflect past earnings or income derived from operations in Michigan withdrawn from the Michigan jurisdiction and which had become permanently located outside of the State at a time when the State had not adopted any law making such acquired assets subject to any such tax.  Such assets were not situated where the aid or protection of laws or government of Michigan were available to plaintiff.

. "The test of whether a tax law violates the *due process* clause is whether it bears some fiscal relation to the protection, opportunities, and benefits given by the State, or, in other words, whether the State has given anything for which it can ask a return." (Italics supplied.) *Wisconsin* v. *J. C. Penney*

*Co.,* 311 US 435 (61 S Ct 246, 85 L ed 267 [L ed syllabus 3]).  See p 444, headnote 3.

Since the enactment of the amendment to the act in question in this case by PA 1945, No 165, the supreme court of the United States has decided the case of *Wheeling Steel Corp.* v. *Glander,* 337 US 562 (69 S Ct 1291, 93 L ed 1544), holding unconstitutional under the 14th amendment (equal protection clause) the Ohio intangible tax law so far as relates to corporations organized in other States admitted to do business in Ohio, notwithstanding the Ohio so-called reciprocity plan offered by Ohio.  The court says, at pages 571, 572:

"After a State has chosen to domesticate foreign corporations, the adopted corporations are entitled to equal protection with the State's own corporate progeny, at least to the extent that their property is entitled to an equally favorable ad valorem tax basis. *Hanover Fire Ins. Co.* v. *Harding,* 272 US 494, 510, 511 (47 S Ct 179, 71 L ed 372, 380, 381, 49 ALR 713) ; *Power Manfg. Co.* v. *Saunders,* 274 US 490, 493, 497, (47 S Ct 678, 71 L ed 1165, 1167, 1169).  Ohio holds this tax on intangibles to be an ad valorem property tax, *Bennett* v. *Evatt,* 145 Ohio St 587 (62 NE2d 345), and in no sense a franchise, privilege, occupation or income tax.

"The Ohio statutory scheme assimilates its own corporate creations to natural residents and all others to nonresidents.  While this classification is a permissible basis for some different rights and liabilities, we have held, as to taxation of intangibles, that the Federal right of a nonresident 'is the right to equal treatment.' *Hillsborough Township* v. *Cromwell,* 326 US 620, 623 (66 S Ct 445, 90 L ed 358, 363)."

Plaintiff claims that section 1 (c) of the statute, CL 1948, § 205.131 (Stat Ann 1947 Cum Supp § 7.556 [1]), hereinbefore cited, violates the equal-protec-

tion clause of the Federal and State Constitutions. On this subject plaintiff claims that on such "used" or "acquired" intangibles a nonresident is required to pay at least 1 tax that is in Michigan and in addition the nonresident will pay whatever tax is required of him outside of Michigan, in contradistinction to which a resident of Michigan is expressly excused from paying the Michigan tax if he is taxed elsewhere respecting his same intangibles.

In other words, it appears that persons having domicile outside the State of Michigan but licensed to do business in Michigan, are subject to the intangible tax as to property used in connection with or acquired from the conduct of business outside the State whereas persons, domiciled in Michigan are not subject to the intangible tax as to property in the same category if such property is taxed outside the State as personal property or intangible personal property. This constitutes a denial of equal protection under the laws of the State of Michigan.

Whether the tax of intangibles is called a property or a privilege tax would, it seems to us, make no difference in the instant case as far as applicability of the cited reasoning from the *Wheeling Steel Corporation Case*, for the principle is the same that after Michigan had domesticated plaintiff corporation, and plaintiff had paid all its other taxes required of it, plaintiff was then entitled to be on an equal footing, to receive the same treatment as Michigan corporations, but such is not the Michigan intangible tax law. The foreign corporation is subject to the Michigan tax under a formula though it may pay an intangible tax elsewhere than in Michigan, but the Michigan corporation is never subjected to paying 2 taxes on the same intangibles.

So far as concerns taxation of intangibles not having situs in Michigan of a nonresident of Michigan,

the above section of the Michigan intangible tax law is unconstitutional as offending against the clause as to equal protection of the laws of the 14th amendment to the United States Constitution and of Michigan Const (1908), art 2, § 1.

Some minor items not in dispute are not mentioned in this opinion. Intangibles owned by plaintiff having an actual situs within Michigan are not in dispute in the case at bar.

We deem section 1 (c) and section 12 of the act in question invalid and void under the circumstances of this case so far as concerns taxation of such of the intangibles of plaintiff as do not have an actual situs in Michigan. Other questions raised need not be decided.

The judgment appealed from is affirmed. No costs, a matter of public interest and importance being involved.

BOYLES, C. J., and NORTH, DETHMERS, BUTZEL, CARR, BUSHNELL, and SHARPE, JJ., concurred.